**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

_____

UNITED STATES OF AMERICA,

   Plaintiff,

v.                 Case No. 08-CR-248

DAVID J. BRODSKO,

   Defendant.

_____

## ORDER

On March 10, 2009, a jury in the Eastern District of Wisconsin returned a verdict finding the defendant David Brodsko ("Brodsko") guilty of one count of making a materially false statement to an agent of the Federal Bureau of Investigation ("FBI"). Brodsko now seeks a judgment of acquittal on that conviction. For the reasons stated below, the court is obliged to deny his motion.

## BACKGROUND

On September 23, 2008, a grand jury charged Brodsko with making a materially false, fictitious, and fraudulent statement to an FBI agent in violation of 18 U.S.C. § 1001.[1] The charge arose from Brodsko's statement that he had not received approximately $43,000 in cash from a second individual, Gerald Kurth ("Kurth"), that Brodsko used to purchase a Hummer vehicle. Brodsko made the statement to an FBI agent during an interview conducted as part of an FBI

---

[1] The statute reads in relevant part: "Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully. . . makes any materially false, fictitious, or fraudulent statement or representation. . . shall be fined under this title, imprisoned not more than 5 years. . ." 18 U.S.C. § 1001(a)(2).

investigation of Kurth. The FBI suspected Kurth of laundering campaign contributions in mayoral and aldermanic races in the City of Kenosha, Wisconsin, as well as laundering cash proceeds from his businesses. Kurth owned several local liquor stores and bars, one of which was closed by the city for code violations. Kurth's anger over this closing reportedly led him to pursue election of a sympathetic mayor and aldermen. He allegedly provided money to other individuals who then made campaign contributions in their own names to his slate of candidates.

To corroborate this information, FBI Special Agent Terry Sparacino ("Agent Sparacino") obtained campaign finance reports from the city clerk. One such report provided the names of contributors to the campaign of Pat Moran ("Moran"), one of Kurth's "favored" candidates. The reports revealed that Brodsko made a $400 contribution to Moran's campaign in October 2007.

The FBI also received information that Kurth provided large amounts of cash to specific parties, including Brodsko. Brodsko was a business associate of Kurth's and had also owned a bar in Kenosha. Agent Sparacino was informed that Kurth provided Brodsko approximately $43,000 in cash in April 2006 and that Brodsko had used these funds to purchase a Hummer from a Kenosha auto dealership. To follow up on this information, the FBI acquired a Form 8300, or cash transaction report, regarding the cash Brodsko provided to the car dealership.

Agent Sparacino interviewed Brodsko at his workplace in August 2008. During the interview, the agent questioned Brodsko regarding his campaign

contribution to Moran. Brodsko recalled making the contribution and explained his motivation for doing so. Brodsko had sold his bar, but was interested in obtaining a liquor license and reentering the bar business. He discussed the issue with Moran, during a fundraiser hosted by Kurth for the candidate, and Moran indicated a willingness to work with Brodsko on obtaining a liquor license. As a result, Brodsko made a contribution to Moran's campaign in the form of a cashier's check.

Agent Sparacino also questioned Brodsko regarding the $43,000 in cash he paid to the dealership for the Hummer vehicle. Brodsko indicated that the cash was money he made from gaming devices at his bar, including pull tabs and video poker machines. Brodsko further reported that he had to pay taxes on the $43,000 in cash because the dealership submitted a Form 8300 to the IRS. The dealership submitted the Form 8300 because it was required to file such a cash transaction report anytime it received more than $10,000 in cash. As part of Agent Sparacino's questioning, he asked Brodsko directly whether the cash was provided by Kurth. Brodsko explicitly denied receiving any funds from Kurth. After concluding the interview, Agent Sparacino presented Brodsko with a grand jury subpoena.

Agent Sparacino also interviewed Kurth as part of his investigation. During the interview, Kurth acknowledged his scheme to provide cash to other individuals for campaign contributions to his slate of candidates. Kurth stated that he did not recall giving Brodsko any money for a campaign contribution.

-3-

On September 16, 2008, Brodsko appeared for his grand jury testimony. Brodsko spoke with Agent Sparacino and United States Attorney Steven Biskupic prior to testifying. Brodsko reported that he was going to tell the truth before the grand jury and that his testimony would be inconsistent with the information he previously provided to Agent Sparacino. Brodsko stated that he and Kurth discussed Brodsko's impending testimony, and that Kurth indicated to Brodsko that he could provide truthful answers. Brodsko then admitted receiving the $43,000 as a loan from Kurth; a loan which he later repaid.

After Brodsko revealed this information, U.S. Attorney Biskupic cancelled Brodsko's grand jury appearance, informed Brodsko that he had committed a federal offense, and advised Brodsko to obtain a lawyer. One week later, a grand jury returned an indictment charging Brodsko with making a material false statement. Brodsko proceeded to jury trial on March 9 and 10, 2009. The evidence presented at trial consisted of testimony from two witnesses, Agent Sparacino and a records custodian who produced the sales records related to Brodsko's Hummer purchase in April 2006. The parties stipulated to several elements of the offense and the court read the stipulations to the jury. The parties first stipulated that Brodsko's statement to Agent Sparacino that Kurth did not provide him with $43,000 in cash was false. The parties also stipulated that Brodsko made the false statement knowingly and willfully. Thus, the only remaining unresolved issue was whether the false statement was "material." The court instructed the jury on materiality as follows:

> A statement is material if it had the effect of influencing the action of the agency, or was capable of or had the potential to do so. It is not necessary that the statement actually have that influence or be relied on by the agency, so long as it had the potential or capability to do so.

At the close of trial, Brodsko made a motion for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedural 29. The court took the motion under advisement and submitted the case to the jury. Following deliberations, the jury found Brodsko "guilty" of the offense charged. The court granted the defense until April 1, 2009, to file a memorandum in support of the Rule 29 motion for acquittal. Brodsko filed a formal written motion and timely supporting memorandum, to which the government has responded. The motion is now before the court for decision.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29(c) permits a defendant to move for a judgment of acquittal within seven days of a guilty verdict. Fed. R. Crim. P. 26(c)(1). The court enters such a judgment when the evidence is "insufficient to sustain a conviction." Fed. R. Crim. P. 26(a). However, "[r]ule 29(c) does not authorize the court to play thirteenth juror." *United States v. Genova*, 333 F.3d 750, 757 (7th Cir. 2003). In deciding a Rule 29(c) motion, the court must consider whether the evidence, when considered in the light most favorable to the verdict, allows a sensible person to find the defendant guilty beyond a reasonable doubt of the crime alleged. *Id.* In other words, a judge should only reverse a jury verdict if the record contains no evidence on which a rational jury could return a guilty verdict. *United States v. Murphy*, 406 F.3d 857, 861 (7th Cir. 2005).

The conviction in the instant case is premised upon a violation of 18 U.S.C. § 1001(a)(2). The elements of the offense include: 1) the defendant made a false statement; 2) the false statement was material; 3) the statement was knowingly and willfully made; and 4) the statement concerned a matter within the jurisdiction of a federal department or agency. *United States v. Turner*, 551 F.3d 657, 661-62 (7th Cir. 2008); 18 U.S.C. § 1001(a)(2). Brodsko stipulated to elements one and three of the offense, admitting that he made a false statement and made it knowingly and willfully. In addition, Brodsko did not contest the fourth element, that his statement concerned a matter within the jurisdiction of the FBI. Thus, the second element, materiality of the statement, was the only element at issue during trial. As a result, the court must determine whether there is sufficient evidence in the trial record establishing the materiality of Brodsko's statement such that a rational jury could find him guilty of the crime beyond a reasonable doubt.

## ANALYSIS

Brodsko asks this court to enter a judgment of acquittal based on insufficient evidence that his false statement to the FBI was material. Brodsko argues that his false statement was not capable of influencing the action of the FBI as "it relates to campaign contributions and 'conduit contributions' by Gerald Kurth." (Def.'s Mot. Acquit. 10). To support his argument, Brodsko submits that there is no evidence the $43,000 used for the loan was illegally obtained or had any relation to campaign contributions. Brodsko also argues there is no evidence that Kurth obtained the

-6-

money within a short period of time, thus, it cannot indicate Kurth's quick access to large amounts of cash. Therefore, Brodsko concludes, his statement was immaterial to the FBI investigation.

In response, the government argues that materiality does not require that the FBI either relied upon, or was influenced by, Brodsko's statement. Instead, the government asserts that Brodsko's lies were capable of influencing the FBI because those statements: a) could corroborate information the FBI received from its source and demonstrate the source's credibility; b) could confirm that Kurth had access to large amounts of cash; and c) could establish the strength of Brodsko's relationship with Kurth, thus supporting the allegation that Brodsko made a campaign contribution on Kurth's behalf.

A false statement is material under § 1001 when the statement has a "natural tendency to influence" or is capable of influencing the decision of the decision-making body to which it was addressed. *United States v. Turner*, 551 F.3d 657, 663 (7th Cir. 2008). Indeed, false statements need not have any ill effect to be material, but need only be capable of such an effect. *Id.* A false statement can be material for purposes of § 1001 even if the government did not rely on the statement and knew it was false. *See United States v. Keller*, 730 F. Supp. 151, 159 (N.D. Ill. 1990). The Sixth Circuit has described the materiality showing as "a fairly low bar for the government to meet" in the context of an investigation. *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001).

-7-

Case 2:08-cr-00248-CNC   Filed 05/22/09   Page 7 of 14   Document 30

The prosecution's decision to charge Brodsko with a felony for lying about the source of a $43,000 loan, a lie he recanted three weeks later, was ill-considered and appears to be a byproduct of pique on the part of the U.S. Attorney rather than a prudent exercise of prosecutorial discretion. Indeed, Brodsko was not the primary target of the FBI investigation and the agency never uncovered any evidence of illegal conduct on his part, other than the false statement which he had recanted prior to his appearance before the grand jury. To be sure, if the court's view of the wisdom of this prosecution mattered, this case would not survive.

However, the wisdom of the government's charging decision is not the issue before the court. The court does not enforce the law, but merely interprets it. Under the law, evidence of Brodsko's false statement fulfills the technical elements of § 1001 and supports a finding of guilt. Therefore, the court is compelled to affirm the jury's verdict and deny Brodsko's motion for acquittal.

Brodsko fails to meet the standard for a judgment of acquittal pursuant to Rule 29. Based on the evidence in the record, a rational jury could find that Brodsko's false statement was "material" under § 1001, as that element has been construed by case law, and determine guilt beyond a reasonable doubt.

Brodsko's false statement was material because it had the capacity to directly influence the manner in which the FBI conducted its investigation. Brodsko's lie inhibited the FBI's ability to establish Kurth's access to cash or to corroborate information from the FBI's source. The FBI was investigating accusations that Kurth

-8-

was laundering money and campaign contributions, thus, his illegal activities presumably involved amounts of untraceable cash. Brodsko's truthful answer that Kurth provided him the $43,000 would provide evidence that Kurth had ready access to large amounts of cash and would tend to corroborate the allegations against him. Indeed, Agent Sparacino testified at trial that he questioned Brodsko about the $43,000 because he was "substantiating the fact that Mr. Kurth had access to large amounts of currency at a moment's notice." (Trial Tr. 39). Further, Brodsko's truthful answer to Agent Sparacino's questions would have corroborated the information the FBI received from its source. Agent Sparacino could then lend more credence to other information he received from that same source. Therefore, Brodsko's false statement had the capacity to, and did, influence the FBI's investigation because the agency could not corroborate its information through Brodsko's interview.

In addition to impacting the actual execution of the investigation, Brodsko's false statement was material simply because it was *intended* to misdirect the FBI. If plausible, an interviewee's lie is inherently capable of influencing an ongoing FBI investigation, regardless of whether the lie in fact altered the course of that investigation. In *United States v. Turner*, the court affirmed the defendant's conviction for making false statements in violation of § 1001 based on his statements to an FBI agent regarding a wire fraud conspiracy conducted by janitors he supervised. 551 F.3d 657, 662-664 (7th Cir. 2008). The court found that the defendant's statements were material, despite the fact that the FBI knew the

-9-

statements were false at the time of the defendant's questioning. *Id.* at 664. The court held that the defendant's attempt to impede the investigation was sufficient, stating: "[Defendant]'s statements were aimed at misdirecting the agents, and this is enough to satisfy the materiality requirement of § 1001." *Id.* The court found that the defendant's misrepresentations were capable of influencing the investigation, despite the fact that the FBI never believed the statements to be true. Instead, the court relied upon the defendant's intent to mislead and the potential for such misdirection.

The court in *United States v. Beaver* also found that the defendant's false statements were material because they attempted to misdirect the FBI's investigation. 515 F.3d 730, 743 (7th Cir. 2008). In *Beaver*, the court affirmed the defendant's conviction under § 1001 for making false statements during an FBI investigation of a ready-mix concrete price-fixing conspiracy. *Id.* The defendant affirmatively concealed his participation in the scheme by claiming he never attended any meetings with the co-conspirators to discuss price-fixing, but rather only saw them at industry trade group meetings. *Id.* at 736. The court found the defendant's statements to be material because they "concealed his actual role in the conspiracy, they could have hindered the FBI's investigation by directing its attention away from the [meeting of conspirators], away from [the defendant's company] involved in the cartel, and away from himself as an individual participant in the conspiracy." *Id.* at 743.

-10-

Case 2:08-cr-00248-CNC   Filed 05/22/09   Page 10 of 14   Document 30

Brodsko's statements are similarly material because they were meant to misdirect the FBI and hinder the agency's investigation. Brodsko knowingly and willfully lied to Agent Sparacino to conceal that Kurth was the actual source of the $43,000 in cash. Thus, Brodsko's lie misdirected any related and resulting investigation into Kurth's access to a large amount of cash and Kurth's reasons for making such a sizeable loan to Brodsko. Brodsko's statement was intended to mislead Agent Sparacino and deflect his attention away from Kurth. To echo the Seventh Circuit, "this is enough to satisfy the materiality requirement of § 1001." *Turner*, 551 F.3d at 664.

Indeed, Brodsko's attempt to conceal the source of the $43,000 loan itself suggests that he knew the information was material to the FBI investigation. In *United States v. Moore*, the court affirmed the defendant's conviction under § 1001 for affirmatively concealing her conflict of interest in receiving a lucrative government contract. 446 F.3d 671, 673 (7th Cir. 2006). In that case, the non-profit organization run by the defendant received block grant funds from the Department of Housing and Urban Development in violation of the agency's regulations because the defendant's mother served as an alderwoman on the Milwaukee Common Council. *Id*. at 674-676. The defendant made misrepresentations to the city regarding her sister, another employee of the organization, in addition to concealing her own relationship with her mother. *Id*. at 676. In concluding that the defendant's statements were material, the court noted that the "great lengths" to which the

defendant and her relatives went to conceal their relationships "demonstrate quite effectively" that the involved individuals "knew that the information was material." *Id.* at 681.

Similarly, Brodsko's elaborate fabrication about the $43,000 loan demonstrates that he knew the information was material to the FBI's investigation. Brodsko denied that Kurth provided him with ready cash, effectively covering for Kurth. However, Brodsko's misrepresentations did not end there. He also concocted a story about an alternate source for the money. Brodsko told Agent Sparacino that the $43,000 he paid for the Hummer came from the sale of pull tabs and from video poker machines at his bar. Brodsko specified that he purchased the pull tabs for $200 to $250 dollars from a manufacturer and then sold the products in his establishment at a profit margin of $1,500 to $2,000 dollars per week. (Trial Tr. 40-41). Thus, Brodsko did not merely deny receiving funds from Kurth, he generated a believable story with supporting details to conceal Kurth's loan. Brodsko made pro-active efforts to mislead the FBI and protect Kurth. These efforts betray Brodsko's awareness that his lie was material to the FBI investigation.

Finally, Brodsko's arguments against materiality are based, in part, on misplaced assumptions. Brodsko assumes that his statements must relate to Kurth's illegal campaign activities or Kurth's "quick access" to cash to be material to the investigation. Since the FBI uncovered no evidence that the $43,000 was obtained in a short period of time or was related to illegal campaign contribution

activities in any way, Brodsko concludes that his lie was immaterial. However, this is not the case. Brodsko's false statements need not be directly related to Kurth's swift access to cash or his laundering of campaign contributions to be capable of influencing the FBI. First, the FBI was investigating Kurth's general money laundering activities in addition to his specific campaign-related activities.[2] Thus, the FBI had reason for interest in any large cash transactions made by Kurth. Second, Brodsko's statements need not provide the FBI with direct evidence of Kurth's wrong-doing to be material to its investigation. Brodsko's statements had the capacity to misdirect the FBI's investigation by concealing Kurth's possession of cash and his willingness to provide that cash to others. This capacity alone makes the statements material.

## CONCLUSION

Sufficient evidence exists in the record for a reasonable jury to conclude that Brodsko's false statement to the FBI was material. As demonstrated above, his statement was capable of influencing the agency's investigation. Therefore, the court will deny Brodsko's motion.

Accordingly,

---

[2] Agent Sparacino testified at trial that his investigation was two-fold. The first aspect of the investigation was Kurth's campaign contribution activities. The second aspect was investigation of Kurth's "ability to launder the cash proceeds that was [sic] generated from his businesses." (Trial Tr. 21:22-23).

**IT IS ORDERED** that Brodsko's motion for judgment of acquittal (Docket #27) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge